UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| CARLOS HUMBERTO CAB SIQUIC, <br> RENE SAGUI XOL, <br> SANTIAGO YAXCAL CUZ <br><br> on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> STAR FORESTRY, LLC; <br> INDEPENDENT LABOR SERVICES, LLC; <br> WHITE PINE REFORESTATION, LLC; <br> AMY SPEARS-THOMAS and <br> DEVIN SPEARS-THOMAS <br><br> Defendants. | Case No. <br><br><br> **COMPLAINT – CLASS ACTION** |

## PRELIMINARY STATEMENT

1. This action is brought by migrant agricultural workers who were admitted to the United States to work under the H-2B temporary foreign worker visa program. The Plaintiffs have been employed in the forestry operations of the Defendants at various times during the period from October 21, 2008 through the filing of this Complaint. The Plaintiffs seek redress on behalf of themselves and all others similarly situated for the Defendants' violations of their rights under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801-1871 (1999) ("AWPA") and the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (1998) ("FLSA").

1

2. This action is brought on behalf of a class of several hundred predominantly Guatemalan migrant workers who planted trees and performed other forestry-related activities for the Defendants since 2008. The Plaintiffs and other class members are indigent migrant workers whom the Defendants brought to the United States on temporary, H-2B work visas. The Plaintiffs and other class members left their homes and families and spent considerable money and effort to come to the United States to perform arduous jobs, which the Defendants have certified that American workers were not willing to do. The precise number of workers in the class is not known, but the class is estimated to be at least 200 workers.

3. Almost all of the Plaintiffs and other class members are non-English speakers who have little, if any, understanding of their legal rights while working in the United States as H-2B forestry workers – particularly their legal rights to receive a prevailing hourly wage and overtime pay. While some class members speak Spanish, a large percentage of the workers are indigenous Guatemalans, who speak Q'eqchi, an indigenous Mayan language, as their primary language and who do not speak Spanish with complete fluency. The Defendants took full advantage of the Plaintiffs' and other class members' indigence, inability to speak or understand English, and their lack of understanding of the laws of the United States to grossly underpay them.

4. The Plaintiffs seek an award of unpaid wages, an award of money damages, declaratory relief, and injunctive relief to make them whole for damages they suffered due to the Defendants' violations of law and to ensure that they and other H-2B workers will not be subjected by the Defendants to such illegal conduct in the future.

## JURISDICTION

5.      Jurisdiction is conferred upon this court by 28 U.S.C. § 1331, this case arising under the laws of the United States, 28 U.S.C. § 1337, this action arising under Acts of Congress regulating commerce, 29 U.S.C. § 1854(a), this action arising under the AWPA, and 29 U.S.C. § 216(b), this action arising under the FLSA.

6.      The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) and 29 U.S.C. § 1854(a).

## PARTIES

8.      Plaintiff Carlos Humberto Cab Siquic is an individual migrant forestry worker who worked for the Defendants under an H-2B visa. He worked for Defendants in 2005-2006, 2007-2008, 2008-2009, 2009-2010, 2011-2012, and 2012-2013; specifically, until approximately June 2010 he worked for Defendants when they were doing business as Independent Labor Services, LLC; from approximately June until November 2010 he worked for Defendants when they were doing business as White Pine Reforestation, LLC; and in 2011-2012 and 2012-2013 he worked for Defendants when they were doing business as Star Forestry, LLC.

9.      Plaintiff Rene Sagui Xol is an individual migrant forestry worker who worked for the Defendants under an H-2B visa. He worked for Defendants in 2008, 2010, and 2012-2013; specifically, in 2008 he worked for Defendants when they were doing business as Independent Labor Services, LLC; from approximately August to November 2010 he worked for Defendants when they were doing business as White Pine Reforestation and Landscaping; and in 2012-2013 he worked for the Defendants when they were doing business as Star Forestry, LLC.

10. Plaintiff Santiago Yaxcal Cuz is an individual migrant forestry worker who worked for the Defendants under an H-2B visa. He worked for Defendant Star Forestry, LLC in 2012-2013, 2011-2012, and 2010-2011. He also worked previously for Independent Labor Services, LLC.

11. At all times relevant to this action, Plaintiffs and other class members were H-2B temporary foreign workers within the meaning of 8 U.S.C. § 1101(a)(15)(H)(ii)(b).

12. At all times relevant to this action, the Plaintiffs and other class members were migrant agricultural workers within the meaning of 29 U.S.C. § 1802(8)(A), in that they were employed in agricultural employment of a seasonal or temporary nature and were required to be absent overnight from their permanent places of residence.

13. Substantial agricultural work was performed by the Plaintiffs and other class members for the Defendants in this state and within this district.

14. At all times relevant to this action, the Plaintiffs and other class members were engaged in agricultural employment for the Defendants within the meaning of 29 U.S.C. § 1802(3).

15. At all times relevant to this action the Plaintiffs and other class members were employees of the Defendants within the meaning of 29 U.S.C. § 203(e)(1).

16. At all times relevant to this action, the Plaintiffs and other class members were employed by the Defendants within the meaning of 29 U.S.C. § 203(g).

17. At all times relevant to this action, the Plaintiffs and other class members were employed by the Defendants in an enterprise engaged in commerce or the production of goods for commerce.

18. Defendant Star Forestry, LLC is an Arkansas limited liability corporation whose corporate status was revoked on December 31, 2011. Despite the fact that its corporate status has been revoked, Defendant Star Forestry, LLC continues to conduct business and conducts business in this District.

19. At all times relevant to this action Defendant Star Forestry, LLC was an agricultural employer within the meaning of 29 U.S.C. § 1802(2).

20. At all times relevant to this action, Defendant Star Forestry, LLC employed the Plaintiffs and other class members within the meaning of 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

21. Defendant Independent Labor Services, LLC is an Arkansas limited liability company whose corporate status was revoked on December 31, 2006. Despite the fact that its corporate status was revoked, Defendant Independent Labor Services, LLC continued to conduct business and conducted business in this District.

22. Defendant Star Forestry, LLC is a successor in interest to Independent Labor Services in that Star Forestry, LLC was a "mere continuation" of Independent Labor Services, LLC.

23. Each of the Plaintiffs began working for Defendants under the name Independent Labor Services, LLC, and later understood that Independent Labor Services, LLC had changed its name to Star Forestry, LLC.

24. Defendants Devin Spears-Thomas and Amy Spears-Thomas owned and/or controlled both Independent Labor Services, LLC and Star Forestry, LLC.

25. The same recruiter in Guatemala, Guillermo Zazo, recruited workers to work for both Independent Labor Services, LLC and Star Forestry, LLC.

26. The same crewleaders supervised H-2B workers for Independent Labor Services, LLC and Star Forestry, LLC.

27. The Plaintiffs and others similarly situated who worked for Star Forestry, LLC and Independent Labor Services, LLC, performed the same forestry work, such as hand planting seedlings, for both companies.

28. Star Forestry, LLC engaged in the same business as Independent Labor Services, LLC and, on information and belief, served the same body of customers.

29. At all times relevant to this action Defendant Independent Labor Services, LLC was an agricultural employer within the meaning of 29 U.S.C. § 1802(2).

30. At all times relevant to this action, Defendant Independent Labor Services employed the Plaintiffs and others similarly situated within the meaning of 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

31. Defendant White Pine Reforestation, LLC is a limited liability corporation organized under the laws of the state of Minnesota, which conducts business in this District. Upon information and belief, White Pine Reforestation, LLC sometimes used the fictitious name White Pine Reforestation and Landscaping, LLC.

32. At all times relevant to this action Defendant White Pine Reforestation, LLC was an agricultural employer within the meaning of 29 U.S.C. § 1802(2).

33. At all times relevant to this action, Defendant White Pine Reforestation, LLC employed the Plaintiffs and others similarly situated within the meaning of 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

34. At all times relevant to this action, Defendants White Pine Reforestation, LLC constituted a single enterprise within the meaning of 29 U.S.C. § 203(r) with Independent Labor Services, LLC and its successor, Star Forestry, LLC.

35. Defendant Amy Spears-Thomas is an individual resident of Minnesota who conducted significant business in this District. Defendant Amy Spears-Thomas had significant contact with the state of Virginia and this District such that jurisdiction and venue are proper in this Court.

36. At all times relevant to this action, Defendant Amy Spears-Thomas employed the Plaintiffs and the other class members within the meaning of 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g) in that she had control of Plaintiffs' payroll and paid Plaintiffs and other class members for their work, signed H-2B orders, and held herself out as the business manager of Star Forestry.

37. Defendant Devin Spears-Thomas is an individual resident of Minnesota who conducted significant business in this District. Defendant Devin Spears-Thomas had significant contact with the state of Virginia and this District such that jurisdiction and venue are proper in this Court.

38. At all times relevant to this action, Defendant Devin Spears-Thomas employed the Plaintiffs and the other class members within the meaning of 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g) in that he had control of all elements of plaintiffs' forestry work, including instructing Plaintiffs and others similarly situated in how their work should be performed, and he held himself out as the owner of Star Forestry, LLC, and signed tree planting contracts on behalf of the company.

## STATEMENT OF FACTS

39. The Defendants operate a tree-planting service, in which they bid on and negotiate contracts to plant trees and perform other forestry-related work on land owned by other individuals and companies. To fill the manpower requirements of its contracts, the Defendants sought importation of foreign nationals to perform forestry work on a seasonal or temporary basis, in accordance with the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(H)(ii)(b).

40. The Plaintiffs and the other members of the class were admitted to the United States to be employed as members of labor crews organized by the Defendants. Each of the Plaintiffs and the other class members was issued a temporary visa, commonly referred to as an "H-2B visa," as authorized by 8 U.S.C. § 1101(a)(15)(H)(ii)(b), its attendant regulations, 8 C.F.R. § 214.2(h)(6), 20 C.F.R. § 655.2, and administrative letters and/or guidance. The Plaintiffs and the other class members were admitted to the United States and were employed by the Defendants.

41. As a condition of obtaining H-2B visas for the Plaintiffs and the other class members, the Defendants certified to the United States Department of Labor that, inter alia, the wages paid the Plaintiffs and other class members would equal or exceed the applicable prevailing wages and that the job would not contravene Federal, State, or local law, including applicable requirements of the H-2B program, as set out in Department of Labor regulations and administrative interpretations.

42. At the time Defendants recruited the Plaintiffs for the reforestation work, Defendants failed to provide the Plaintiffs with a written statement of the terms and conditions of the proffered employment, as required by the AWPA, 29 U.S.C. §§1821(a) and (g), and its attendant regulations, 29 C.F.R. §§500.75(b) and 500.78.

43. The Plaintiffs and other class members spent considerable sums of money to process their H-2B work visas and travel from their home villages to the United States. The Plaintiffs and other class members incurred these costs for the primary benefit of their Defendant employers. The Plaintiffs and other class members were generally required to spend approximately $1,500 or more to obtain passports and visas and to travel to the United States. Because the Plaintiffs and other class members were indigent, they were forced to go into debt to obtain that money—often by borrowing the money from loan sharks at exorbitant interest rates.

44. As a result of these pre-employment expenses incurred for the benefit of their employers, all Plaintiffs and class members earned significantly less than the minimum wage in their first week of work. On average, each Plaintiff and class member is owed at least $1,200 for unpaid minimum wages in their first week of work alone. Because many Plaintiffs and class members worked multiple years and were required to return to Guatemala between seasons, many were required to incur these expenses multiple times, and were thus underpaid in their first week of work many times. For example, Plaintiff Carlos Humberto Cab Siquic came to work for the Defendants on approximately four occasions during the time period covered by this lawsuit, each time incurring these expenses and earning far less than the minimum wage in the first week of work.

45. The Plaintiffs and other class members performed arduous tree planting and associated forestry work for the Defendants in Virginia, Florida, Alabama, Louisiana, Mississippi, North Carolina, Arkansas, Wisconsin, Michigan, Minnesota, and other states. They regularly worked far in excess of 40 hours in a given workweek. During the tree planting season, Plaintiffs and class members typically worked more than ten hours a day, taking only very short rest breaks of less than twenty minutes during the workday to eat and rest. For

example, Carlos Humberto Cab Siquic typically worked six days per week, at least ten hours per day, except when weather did not permit. Plaintiffs and other class members generally worked at least 60 hours per week during the tree planting season, which typically lasted from November through March, depending on the location of the planting.

46. Throughout the time that the Plaintiffs and class members were employed by Defendants conducting tree planting activities, the Plaintiffs were told they would be paid on a piece-rate basis. Although this amount varied, in the most recent year, the Plaintiffs and class members were told they would be paid $30 for every one thousand trees planted. During tree planting seasons, Plaintiffs and other class members were paid only their piece-rate earnings, which averaged $300 per week.

47. The Defendants failed to properly compensate the Plaintiffs and the other members of the class, at times delaying payment for up to two months and not compensating the Plaintiffs and the other members of the class at all for periods of time when they worked.

48. The Defendants did not make and keep accurate and complete records regarding the employment of the Plaintiffs and other class members, nor did they provide any records to the Plaintiffs and other class members regarding their work. When the Defendants compensated the Plaintiffs for their work, the Defendants paid the Plaintiffs in cash. The Defendants neglected to provide the Plaintiffs with paystubs and failed to issue complete and accurate records regarding the Plaintiffs' employment. Indeed, Defendants and the other members of the class did not provide the Plaintiffs and the other members of the class with wage statements of any kind.

49. Although the Plaintiffs frequently were employed for more than 40 hours in a particular workweek, Defendants deliberately failed to pay the Plaintiffs one-and-a-half times

10

their regular rate for all hours worked in excess of 40 in a workweek. For example, Plaintiffs and other class members sometimes performed work on an hourly basis (including performing such tasks as chemical spraying and cleaning around trees). When they did that, they did not receive an overtime bonus for hours over 40 in any given workweek.

50. The Defendants failed to pay the Plaintiffs and the other members of the class the proper prevailing wage for all the work they performed. The prevailing wage rate required to be paid varied by location, but Plaintiffs estimate that the average applicable prevailing wage rate was $9 per hour. At that rate, Plaintiffs should have earned at least $630 per week (40 hours at the prevailing wage of $9 per hour, and 20 overtime hours at 1.5 their regular rate, *i.e.*, $13.50 per hour). The Defendants did not supplement the Plaintiffs' piece-rate earnings to raise them to the applicable prevailing wage.

51. Because of the Defendants' failure to provide the Plaintiffs with wage statements containing the data required to be disclosed under the AWPA, 29 U.S.C. 1821(d)(2) and 29 C.F.R.500.80(d), the Plaintiffs are unable to state with certainty the amount of unpaid wages owed until they review payroll and other data in the exclusive possession of the Defendant.

52. Plaintiffs also had deductions taken from their pay that were for the benefit of the employer that further reduced their wages below that authorized by federal law. Those deductions include payments for gas for the Defendants' vehicles. However, because Defendants consistently and unlawfully failed to provide the Plaintiffs and other class members with any kind of wage statement itemizing these deductions, Plaintiffs are unable to state with certainty the amount of deductions taken from their pay until they review payroll and other data in the exclusive possession of the Defendant.

53. In addition, Plaintiffs and other class members were required to travel very long distances as part of their jobs. Plaintiffs and other class members were not paid for any of the time they spent engaged in this interstate travel for work. Some of the trips class members were required to make were as long 20 hours or more (traveling, for example, from Virginia to Minnesota). Not only were Plaintiffs and class members not paid for this time, they were required to pay for the gas for the Defendants' vehicle that was transporting them—a deduction from their wages that was for the benefit of the employer and which further reduced their wages below the applicable minimum wage.

54. The Defendants were aware of the requirements of the FLSA and the AWPA, because, among other things, they had both been deposed in connection with a lawsuit alleging substantially similar violations to those claimed here, filed against Amy Spears-Thomas' parents and their forestry company.

## CLASS ACTION ALLEGATIONS

55. All claims set forth in Count I are brought by the Plaintiffs on behalf of themselves and all other similarly situated persons pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

56. The named Plaintiffs seek to represent a class consisting of all those individuals admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b), who were employed in the Defendants' forestry operations from October 2008 until the present.

57. The precise number of individuals in the class is known only to the Defendants. The class is believed to include well over 200 individuals. The class is comprised principally of indigent migrant farmworkers who maintain their residences in locations primarily throughout

Guatemala. The class members are not fluent in the English language and are primarily subsistence farmers and laborers in Guatemala. The relatively small size of the individual claims, the geographical dispersion of the class, and the indigence of the class members make the maintenance of separate actions by each class member economically infeasible. Joinder of all class members is impracticable.

58. There are questions of fact and law common to the class. These common questions include whether the Defendants failed to pay the named Plaintiffs and other class members prevailing and overtime wages promptly when due, as required by law; whether Defendants failed to maintain complete and accurate records regarding the Plaintiffs' and the class members' work; whether the Defendants failed to provide the Plaintiffs and the class members with complete and accurate wage statements; and whether the Defendants' failure to maintain complete and accurate records regarding the work of the Plaintiffs and the class members, Defendants' failure to pay prevailing and overtime wages when due, and Defendants' failure to provide the named Plaintiffs and the class members with complete and accurate wage statements, were violations of the AWPA.

59. The claims of the named Plaintiffs are typical of the class. The named Plaintiffs have the same interests as do the other members of the class and will vigorously prosecute these interests on behalf of the class.

60. Counsel for the Plaintiffs have handled numerous AWPA and FLSA actions in the federal courts. They are prepared to advance litigation costs necessary to vigorously litigate this action.

61. The common questions of fact and law described above predominate over any questions affecting only individual class members, because the Defendants' behavior was uniformly directed to all members of the class.

62. A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy because, <u>inter</u> <u>alia</u>:

- The common issues of law and fact, as well as the relatively small size of the individual class members' claims, substantially diminish the interest of members of the class in individually controlling the prosecution of separate actions;

- Many members of the class are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

- There has been no litigation already commenced against the Defendants by the members of the class to determine the questions presented;

- It is desirable that the claims be heard in this forum since the Defendants have significant contacts with this District; and

- A class action can be managed without undue difficulty since the Defendants have regularly committed the violations complained of herein, and are required to maintain detailed records concerning each member of the class.

## COUNT I

## MIGRANT AND SEASONAL AGRICULTURAL

## WORKER PROTECTION ACT

## (CLASS ACTION)

63. This count sets forth a claim by the Plaintiffs and the other members of the class for money damages, declaratory relief and injunctive relief, with respect to the defendants' violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA").

64. The certifications described in paragraph 41 above constituted a working arrangement between the Defendants and the Plaintiffs and other class members within the meaning of the AWPA, 29 U.S.C. § 1822(c), and its attendant regulations, 29 C.F.R. § 500.72.

65. The Defendants failed to pay the Plaintiffs and the other members of the class the proper prevailing wage for all the work they performed, and failed to pay the Plaintiffs and the other members of the class overtime wages for all compensable time they were employed in excess of forty (40) hours in a given workweek.

66. The violation of the AWPA as set out in paragraph 65 resulted in part from the Defendants' failure to supplement the piece-rate earnings of the Plaintiffs and the other class members so as to raise their individual pay period wages to a rate equal to or exceeding the prevailing and overtime wage.

67. The violation of the AWPA as set out in paragraph 65 resulted in part from the Defendants' maintenance of incomplete, false and inaccurate records of the hours worked by Plaintiffs and other class members.

68. The violation of the AWPA as set out in paragraph 65 resulted in part from the Defendants' failure to reimburse the Plaintiffs and the other members of the class for expenses they incurred which were primarily for the benefit of the Defendants, as well as the Defendants' unlawful withholdings and deductions from the wages of the Plaintiffs and the other class members.

69. By their actions as described above, the Defendants violated without justification their working arrangement with the Plaintiffs and the other members of the class, thereby violating the AWPA, 29 U.S.C. § 1822(c), and its attendant regulations, 29 C.F.R. § 500.72.

70. By their actions as described above, the Defendants failed to pay the Plaintiffs and other members of the class their wages owed promptly when due, thereby violating the AWPA, 29 U.S.C. § 1822(a), and its attendant regulations, 29 C.F.R. § 500.81.

71. The Defendants failed to make, keep, and preserve accurate and complete records regarding the Plaintiffs' and the other class members' employment, in violation of the AWPA, 29 U.S.C. § 1821(d)(1), and its attendant regulations, 29 C.F.R. § 500.80(a).

72. The Defendants failed to provide the Plaintiffs and the other class members complete and accurate itemized written statements for each pay period containing the required information, in violation of the AWPA, 29 U.S.C. § 1821(d)(2), and its attendant regulations, 29 C.F.R. § 500.80(d).

73. The violations of the AWPA and its attendant regulations as set forth in this count were the natural consequences of the conscious and deliberate actions of the Defendants and occurred as a result of their regular business practices. These violations were intentional within the meaning of the AWPA, 29 U.S.C. § 1854(c)(1).

74. As a result of the Defendants' violations of the AWPA and its attendant regulations as set forth in this count, the Plaintiffs and the other members of the class have suffered damages.

## COUNT II

## FAIR LABOR STANDARDS ACT

### (COLLECTIVE ACTION)

75. This count sets forth a claim for declaratory relief and damages for the Defendants' violations of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"). This count is brought by the Plaintiffs on behalf of themselves and other current or former H-2B temporary foreign workers who are similarly situated and employed by the Defendants.

76. Pursuant to 29 U.S.C. § 216(b), Plaintiffs Carlos Humberto Cab Siquic, Santiago Yaxcal Cuz, and Rene Sagui Xol have consented in writing to be party plaintiffs in this FLSA action. In addition, Roberto Xol Paau, Armando Cuc Xol, Crisanto Tun Cho, Mario Rax Cuc, Juan Manuel Xol Tzib, Jose Domingo Xol Tzib, Alvaro Sagui Xol, Ricardo Itz Cuc, Hermelindo Yaxcal Cuz, Rumaldo Botzoc Butz, Jorge Paau Yaxcal, Javier Choc Caal, Hector Mo Cucul, and Juan Xo Perez have also consented in writing to be party plaintiffs in this FLSA action. Their written consents are attached to this complaint.

77. The Defendants violated 29 U.S.C. § 206(a) by failing to pay each of the Plaintiffs and others similarly situated the applicable minimum wage for every compensable hour of labor they performed.

78. The Defendants violated 29 U.S.C. § 207(a) by failing to pay the Plaintiffs and others similarly situated at an hourly rate equal to one and a half times their regular rate of pay for all compensable time they were employed in excess of forty (40) hours in each workweek.

79. The violations of the FLSA set out above resulted in part from the Defendants' failure to supplement the piece-rate and hourly earnings of the Plaintiffs and others similarly situated so as to raise their individual wages each workweek to a rate equal to or exceeding the minimum and overtime wage.

80. The violations of the FLSA set forth above resulted, in part, from the Defendants' maintenance of incomplete, false and inaccurate records of the hours worked by Plaintiffs and others similarly situated.

81. The violations of FLSA set forth above resulted, in part, from the Defendants' failure to reimburse the Plaintiffs and others similarly situated for expenses they incurred which were primarily for the benefit of the Defendants.

82. The violations of the FLSA set forth above resulted, in part, from the Defendants' unlawful withholdings and deductions from the wages of the Plaintiffs and others similarly situated.

83. The Defendants' failures to pay the Plaintiffs and others similarly situated their federally mandated minimum wages, and their federally mandated overtime wages for all time they were employed in excess of forty (40) hours in a workweek, were willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

84. As a consequence of the Defendants' violations of the FLSA, the Plaintiffs and others similarly situated are entitled to recover their unpaid minimum and overtime wages, plus an additional equal amount in liquidated damages, costs of suit, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray that this Court will enter an order:

1. Certifying this case as a class action in accordance with Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims set forth in Count I;

2. With respect to the claims set forth in Count II, permitting this case to proceed as a collective action;

3. Declaring that the Defendants intentionally violated the Migrant and Seasonal Agricultural Worker Protection Act and its attendant regulations, as set forth in Count I;

4. Declaring that the Defendants willfully violated the minimum wage and overtime provisions of the Fair Labor Standards Act, as set forth in Count II:

5. Granting judgment in favor of the Plaintiffs and the other class members and against the Defendants, jointly and severally, on these Plaintiffs' and other class members' claims under the AWPA as set forth in Count I and awarding each of the Plaintiffs and the other class members actual or statutory damages for each violation of the AWPA, whichever is greater;

6. Permanently enjoining the Defendants from further violations of the AWPA and its attendant regulations;

7. Granting judgment in favor of the Plaintiffs and all others similarly situated and against the Defendants, jointly and severally, on their claims under the Fair Labor Standards Act as set forth in Count II and awarding each of these Plaintiffs and all other similarly situated individuals who opt-in to this action his unpaid minimum and overtime wages and an equal amount in liquidated damages;

8. Awarding the Plaintiffs the costs of this action;

9. Awarding the Plaintiffs reasonable attorneys' fees with respect to their Fair Labor Standards Act claims; and

10. Granting such further relief as is just and equitable.

Respectfully submitted this 21st day of October, 2013,

CARLOS HUMBERTO CAB SIQUIC
RENE SAGUI XOL

19

SANTIAGO YAXCAL CUZ

By Counsel

_____/s/_____
Erin Trodden, VSB # 71515
erin@justice4all.org
Mary C. Bauer, VSB # 31388
mary@justice4all.org
Tim Freilich, VSB # 44077
tim@justice4all.org
Angela Ciolfi, VSB # 65337
angela@justice4all.org
Legal Aid Justice Center
1000 Preston Ave., Suite A
Charlottesville, VA 22903
(434) 977-0553
(434) 977-0558 facsimile