CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 05 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

CARLOS HUMBERTO CAB SIQUIC, ET AL.,   )
                                                                    )
      Plaintiffs,                        )   Civil Action No. 3:13CV00043
                                                                    )
v.                                                    )   **MEMORANDUM OPINION**
                                                      )
                                                      )   By: Hon. Glen E. Conrad
STAR FORESTRY, LLC, ET AL.,          )   Chief United States District Judge
                                                      )
     Defendants.                     )

Plaintiffs Carlos Humberto Cab Siquic and Santiago Yaxcal Cuz filed this action on behalf of themselves and others similarly situated against defendants Star Forestry, LLC, Independent Labor Services, LLC, White Pine Reforestation, LLC, Amy Spears-Thomas, and Devin Spears-Thomas for violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801 et seq., and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. This matter is currently before the court on plaintiffs' motion to certify their proposed class under Rule 23 of the Federal Rules of Civil Procedure and the FLSA. Defendants are currently in default and have not responded to plaintiffs' motion. For the reasons set forth below, plaintiffs' motion will be granted.

## Background

Since defendants are in default, the facts underlying this litigation are uncontested. The two individuals named in the complaint are indigent migrant workers who were employed by defendants Star Forestry, LLC, Independent Labor Services, LLC, White Pine Reforestation, LLC, Amy Spears-Thomas, and Devin Spears-Thomas at various times during the period of

October 21, 2008 through the filing of the complaint.[1] Defendants operated tree-planting services in which they bid on and negotiated contracts to plant trees on land owned by other individuals and companies. Devin Spears-Thomas had an ownership interest in all three defendant companies and Amy Spears-Thomas had an ownership interest in Independent Labor Services, LLC and Star Forestry, LLC. In order to fulfill the manpower requirements under these contracts, defendants sought foreign nationals to perform forestry work on a seasonal or temporary basis. In order to work in the United States, plaintiffs obtained temporary visas, also known as "H-2B" visas. Subsequently, plaintiffs were admitted to the United States and employed as members of labor crews organized by defendants. As a condition for obtaining H-2B visas, defendants certified to the Department of Labor that they would pay plaintiffs equal to, or in excess of, the prevailing wage for the job. At the time they recruited plaintiffs, defendants failed to provide plaintiffs with written statements of the terms and conditions of their employment.

Plaintiffs spent considerable sums of money in order to process their H-2B visas and to travel to the United States. These expenses were approximately $1,900 or more per worker. As a result of these unreimbursed expenses, plaintiffs earned significantly less than the minimum wage during their first week of work. Since plaintiffs returned home between each working season, they incurred these expenses multiple times during the relevant period. On average, plaintiffs believe that they are owed at least $1,200 for unpaid minimum wages for their first weeks of work alone.

Plaintiffs allege a number of violations by the defendants under the FLSA and AWPA. First, according to plaintiffs, defendants would delay paying plaintiffs for several months after

---

[1] Rene Sagui Xol, who was originally listed on the complaint as a plaintiff, has asked to withdraw as a class representative. He still remains a proposed class member and opt-in plaintiff under the FLSA.

their work was completed. Second, defendants did not provide plaintiffs with pay stubs or any records regarding their hours, trees planted, wages paid, or deductions taken from their paychecks. This failure caused plaintiffs to be unable to state with certainty the amount of unpaid wages they were owed. Third, defendants failed to compensate plaintiffs for overtime when plaintiffs frequently worked over 40 hours a week. Fourth, defendants failed to pay plaintiffs the prevailing wage for the work they performed, which plaintiffs estimate to have been $9 per hour. Fifth, defendants deducted money from plaintiffs' wages for business expenses, such as gas and hotel rooms. Sixth, plaintiffs were required to travel long distances as part of their employment, for which they were not compensated. Overall, due to these shortcomings, plaintiffs earned significantly less than the minimum wage and the prevailing wage in the area.

Plaintiffs filed a class action complaint on October 21, 2013, seeking to bring class claims against defendants on behalf of all "individuals admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b) who were employed in the defendants' forestry operations from October 2008 until the present." Compl. ¶ 56. To that end, plaintiffs have filed a motion to certify their proposed class and collective actions.

Defendants Devin Spears-Thomas, Independent Labor Services, LLC, and White Pine Reforestation, LLC were served with process on December 17, 2013. Defendants Amy Spears-Thomas and Star Forestry, LLC were served with process on January 27, 2014. Defendants failed to file any responsive pleadings and the clerk entered default against them on March 12, 2014. On June 1, 2015, plaintiffs filed a motion for default judgment against all defendants, pending the class certification decision.

## Standard of Review

"[A]lthough a default judgment has the effect of deeming all factual allegations in the

3

complaint admitted, it does not also have the effect of 'admitting' the independent legal question of class certification." Partington v. Am. Int'l Specialty Lines Ins. Co., 443 F.3d 334, 341 (4th Cir. 2006). The United States Court of Appeals for the Fourth Circuit does not allow the rigorous Rule 23 analysis to be accomplished "implicitly." Id. As such, a clerk's entry of default against a defendant "does not alter the Court's class certification analysis." Toler v. Global Coll. of Natural Med., Inc., No. 13-10433, 2015 WL 1611274, at *3 (E.D. Mich. Apr. 10, 2015); see also Skeway v. China Natural Gas, Inc., 304 F.R.D. 467, 472 (D. Del. 2014) (certifying class after an entry of default but before entry of default judgment). Therefore, "relief cannot be granted to a class before an order has been entered determining that class treatment is proper." Davis v. Romney, 490 F.2d 1360, 1366 (3d Cir. 1974); see also Partington, 443 F.3d at 340 ("Federal courts may only adjudicate the rights of putative class members upon certification of that class under Federal Rule of Civil Procedure 23.").

In order to determine whether class treatment is proper, the court is required to conduct a "rigorous analysis" to ensure that a proposed class action complies with the requirements set forth in Rule 23. Thorn v. Jefferson-Pilot Life Ins. Co., 455 F.3d 311, 318 (4th Cir. 2006); Harris v. Rainey, 299 F.R.D. 486, 489 (W.D. Va. 2014). Specifically, "[t]o be certified, a proposed class must satisfy Rule 23(a) and one of the three sub-parts of Rule 23(b)." Thorn, 455 F.3d at 318; Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613-14 (1997). In addition, the Fourth Circuit has "repeatedly recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" EQT Prod. Co v. Adair, 764 F.3d 347, 358 (4th Cir. 2014) (quoting Hammond v. Powell, 462 F.2d 1053, 1055 (4th Cir. 1972)). A party seeking class certification must do more than plead compliance with the Rule 23 requirements. Id. Rather, the party must present evidence that the putative class complies with Rule 23. Id.

4

Ultimately, it is the plaintiffs' burden to demonstrate class status. Bullock v. Bd. of Educ. of Montgomery Cnty., 201 F.R.D. 556, 58 (D. Md. 2002).

## Discussion

As a threshold matter, the court must determine whether the proposed class is "readily identifiable" EQT Prod. Co., 764 F.3d at 358. The plaintiffs "need not identify every class member at the time of certification" in order for the proposed class to be readily identifiable. Id. Instead, it must be "administratively feasible for a court to determine whether a particular individual is a member." 7A Charles Alan Wright et al., Federal Practice and Procedure § 1760 (3d ed. 2005). Specifically, "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." EQT Prod. Co., 764 F.3d at 358 (quoting Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 593 (3d Cir. 2012).

Here, the proposed class members are H-2B temporary foreign workers who were employed in defendants' forestry work from October 2008 to the time of the complaint. Because these individuals were required to obtain H-2B visas in order to work in the United States, their passports will specify their employer and the periods of employment. Thus, it will not be administratively burdensome for the court to determine whether an individual is a member of the proposed class. Accordingly, the court holds that the proposed class is readily identifiable.

### I. Rule 23(a)

Rule 23(a) requires the following prerequisites for the court to certify a class: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

5

### a. *Numerosity*

The first requirement under Rule 23(a) is that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No bright line test exists for determining numerosity and the determination rests on the court's practical judgment in light of the particular facts of the case." Savani v. Wash. Safety Mgmt. Solutions, LLC, No. 1:06-CV-02805-MBS, 2012 WL 3757239, at *2 (D.S.C. Aug. 28, 2012). Plaintiffs need not provide an exact number of class members. Harris v. Rainey, 299 F.R.D. at 489. However, "an unsubstantiated allegation as to numerosity ... is insufficient to satisfy Rule 23(a)(1)." Hewlett v. Premier Salons Int'l, 185 F.R.D. 211, 215 (D. Md. 1997). Instead, "where general knowledge and common sense would indicate that it is large, the numerosity requirement is satisfied." Mitchell-Tracey v. United Gen. Title Ins. Co., 237 F.R.D. 551, 556 (D. Md. 2006). Generally, "[w]here the class is twenty-five or more, joinder is presumed impracticable." Talbott v. GC Servs. Ltd. P'Ship, 191 F.R.D. 99, 102 (W.D. Va. 2000). In addition, the court may also consider other factors, such as "geographic dispersion, degree of sophistication, and class members' reluctance to sue individually." Leyva v. Buley, 125 F.R.D. 512, 515 (E.D. Wash. 1989).

Here, the uncontested facts in plaintiffs' complaint indicate that the class is comprised of approximately 200 migrant workers from Guatemala. In fact, defendant Amy Spears-Thomas stated during a Rule 30(b)(6) deposition on behalf of Star Forestry, LLC that the company generally applied for at least 75 visas per season. Thus, at a minimum, the class contains 75 workers. However, Amy Spears-Thomas also stated in the deposition that the retention rate for workers from season to season was between 50 to 75 percent. Based on this information, plaintiffs estimate that there were between 19 to 38 new temporary migrant workers each season. Therefore, plaintiffs argue that their estimate of 200 proposed class members is reasonable.

6

The court finds that this estimate is substantiated and constitutes a good faith estimate. Moreover, this proposed class size is greater than others that the Fourth Circuit has found to be appropriate for class certification. See, e.g., Brown v. Nucor Corp., 576 F.3d 149, 152 (4th Cir. 2009) (proposed class size of 94); Hosley v. Armour & Co., 743 F.2d 199, 217 (4th Cir. 1984) (proposed class size between 46 to 60); Brady v. Thurston Motor Lines, 726 F.2d 136, 146-47 (4th Cir. 1984) (proposed class size of 74); Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967) (proposed class size of 18). In addition, taking into account other factors, the court finds that joinder would be impracticable, given that the proposed class includes migrant workers who live in remote villages in Guatemala, do not speak English, are indigent, and are unfamiliar with U.S. law. Overall, these individual class members would be reluctant to file their actions individually because of the cost and difficulty. Accordingly, plaintiffs have met their burden regarding the numerosity requirement.

### b. *Commonality*

The element of commonality requires that there be "questions of law or fact common to the class." Fed. R. Civ P. 23(a)(2). This requirement is to be "liberally construed" although the Supreme Court has recently required heightened scrutiny. Scott v. Clarke, 61 F. Supp. 3d 569, 584-85 (W.D. Va. 2014) (quoting McGlothlin v. Connors, 142 F.R.D. 626, 632 (W.D. Va. 1992)). Specifically, commonality requires a "common contention [that] is capable of classwide resolution" that can be provided "in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2545 (2011). This means that plaintiffs must demonstrate that class members have suffered the same injury, not merely the same violation of the same provision of law. Id. at 2551. Even one common question of law or fact will suffice to satisfy the commonality requirement. Id. at 2556; see also Scott, 61 F. Supp. 3d at 585.

7

In this case, according to plaintiffs' unopposed motion and complaint, it is clear that the proposed class members' claims involve common questions of fact regarding defendants' employment practices. The complaint lists several failures by the defendants, which were common among all H-2B employees regardless of dates of employment or assigned crew. These allegations include failure to: (1) provide any written disclosure of the terms and conditions of employment; (2) reimburse visa processing and travel costs up to the level of minimum wage or the prevailing wage required for H-2B workers; (3) pay minimum, prevailing, and overtime wages when due; (4) provide employees with paystubs or any other documents showing required information, such as work performed and pay; and (5) maintain and preserve accurate payroll records. Plaintiffs filed several declarations that confirmed these widespread failures. In addition, Amy Spears-Thomas admitted in the Star Forestry, LLC deposition that she did not save handwritten calculations that were used to ensure that employees received the prevailing wages, she paid workers in cash, and she did not give employees paystubs until this most recent season. The court finds that these facts are sufficient in order to demonstrate that the putative class members suffered a common injury.

Moreover, there are common questions of law in this case, namely whether defendants' employment practices violated the AWPA and the FLSA. In a similar case involving the AWPA and migrant workers, the district court found that such common questions of liability met the commonality requirement. Haywood v. Barnes, 109 F.R.D. 568, 577-78 (E.D.N.C. 1986). Therefore, in the instant case, the court finds that there are common questions of law and fact that are capable of classwide resolution in one stroke. Accordingly, plaintiffs have met the commonality requirement.

8

### c. *Typicality*

The element of typicality requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The claim of a party is typical if it "arises from the same event or course of conduct which gives rise to the claims of other class members and is based on the same legal theory." Haywood, 109 F.R.D. at 578. Moreover, "[w]here '[t]he representative party's interest in prosecuting his own case ... simultaneously tend[s] to advance the interests of the absent class members,' the typicality standard is satisfied." Scott, 61 F. Supp. 3d at 589 (quoting Soutter v. Equifax Info. Servs., LLC, 498 F. App'x 260, 264 (4th Cir. 2012)). The court also notes that "the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of the class members, differences in the amount of damages claimed, or even differences in the availability of certain defenses against a class representative." Haywood, 109 F.R.D. at 578. The claims need not "be perfectly identical or perfectly aligned." Deiter v. Microsoft Corp., 436 F.3d 461, 466-67 (4th Cir. 2006).

In this case, the two named plaintiffs worked for defendants' forestry practice during the relevant period as H-2B temporary workers. Plaintiffs' unopposed complaint and motion allege a number of FLSA and AWPA violations by the defendants during the relevant period pertaining to payroll, wages, reimbursements, and employment documentation. These failures affected, albeit in varying degrees, all members of the proposed class. See Haywood, 109 F.R.D. at 578 (finding that typicality was satisfied when defendants' practices affected the migrant farm workers in the same way, although in varying degrees). Therefore, it is clear that the named plaintiffs, by prosecuting their cases, will simultaneously advance the interests of the absent class members. Any differences in the amount of damages suffered by the members of the class do not

9

"make the plaintiffs' legal claims atypical [] of the proposed class, as the slight factual differences do not alter the nature of the claims." Neese v. Johanns, No. CIV. A. 1:05-CV-00071, 2006 WL 1169800, at *7 (W.D. Va. May 2, 2006). Therefore, the court finds that the named plaintiffs' and the proposed class's claims are interrelated, arise from the same course of conduct, and are based on the same legal theory. Accordingly, plaintiffs have satisfied the typicality requirement.

### d. *Adequacy*

Finally, the element of adequacy requires that the named plaintiffs "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry ... serves to uncover conflicts of interest between named parties and the class they seek to represent." Harris, 299 F.R.D. at 491. This inquiry tends to "merge with the preceding inquiries into commonality and typicality." Id. A conflict must be "so fundamental to defeat adequacy of representation; a conflict is not fundamental when all class members 'share common objectives and the same factual and legal positions and have the same interest in establishing the liability of defendants.'" Id. (quoting Ward v. Dixie Nat. Life Ins. Co., 595 F.3d 164, 180 (4th Cir. 2010)). In addition to the inquiry regarding the named plaintiffs, the adequacy requirement also determines conflicts and competency of class counsel. Amchem Prods., Inc., 521 U.S. at 626 n.20; see also McGlothlin v. Connors, 142 F.R.D. 626, 633-34 (W.D. Va. 1992) ("The adequacy of legal counsel focuses on whether counsel is competent, dedicated, qualified, and experienced enough to conduct the litigation and whether there is an assurance of vigorous prosecution.").

In this case, the court finds no conflicts between the named plaintiffs and the members of the class they seek to represent. Again, the named plaintiffs suffered the same injuries as the proposed class members and assert claims under the same legal theories. In their declarations,

10

Case 3:13-cv-00043-GEC   Document 54   Filed 10/05/15   Page 10 of 19   Pageid#: 620

both named plaintiffs state that they are prepared to represent the interests of the class members and are able to do so. As defendants are in default, they do not allege any conflicts between the named plaintiffs and the proposed class members. Therefore, the interests of the named plaintiffs and the proposed class members are aligned, and recovery for the named plaintiffs would afford identical relief for all members of the class.

As to class counsel, plaintiffs assert that the Legal Aid Justice Center is a well-known public interest legal services organization with substantial experience in immigrant advocacy and class action litigation. This court has previously found the Legal Aid Justice Center to be a competent organization. Scott, F. Supp. 3d at 590. In addition, Covington & Burling LLP is a reputable national law firm with extensive experience in a wide variety of legal issues, including employment disputes. Plaintiffs also note that both organizations have sufficient funds to advance all necessary costs of the litigation, and will vigorously and competently prosecute this action. In support of these arguments, plaintiffs attached a declaration from each organization. Defendants do not dispute these qualifications. The court finds that class counsel is competent, and there are no conflicts between class counsel and the proposed class. Accordingly, plaintiffs have met the adequacy requirement.

For the foregoing reasons, the court finds that the Rule 23(a) requirements are satisfied.

## II.     **Rule 23(b)**

In addition to meeting the requirements of Rule 23(a), a class must also qualify as one of the three types of classes set forth under Rule 23(b). Gray v. Hearst Commc'n, Inc., 444 F. App'x 698, 700 (4th Cir. 2011). Plaintiffs seek to pursue their claims as a Rule 23(b)(3) class. Class certification pursuant to Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a

11

class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance and superiority requirements ensure that courts achieve economy in time, effort, and expense without sacrificing procedural fairness. Amchem Prods., Inc., 521 U.S. at 615. Here, the court finds that plaintiffs have met this standard.

### a. *Common Questions of Law or Fact Predominate*

Although plaintiffs have established the existence of common questions of law and fact between the named plaintiffs and proposed class members, they must also show that these common questions predominate over any questions affecting individual members. Haywood, 109 F.R.D. at 581. This question is "similar to but more stringent than the commonality requirement of Rule 23(a)." Thorn, 455 F.3d at 319. It "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc., 521 U.S. at 623. For example, if "common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." Stillmock v. Weis Markets, Inc., 385 F. App'x 267, 273 (4th Cir. 2010) (quoting Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 40 (1st Cir. 2003)); see also Hewlett, 185 F.R.D. at 220 ("Where, however, the issue of liability turns on something peculiar to the individual plaintiffs, such as the plaintiffs' responses or states of mind, then common questions have been held not to predominate."). Nevertheless, "the mere fact that the defendants engaged in uniform conduct is not, by itself, sufficient to satisfy Rule 23(b)(3)'s more demanding predominance requirement." EQT Prod. Co., 764 F.3d at 366. Instead, plaintiffs must show "not only the existence of common questions, but also ... how those questions relate to the controversy at the heart of the litigation." Id.

12

In the instant case, the named plaintiffs and the proposed class members allege the same injuries through repeated conduct by the same defendants. In addition, the named plaintiffs and proposed class members pursue their claims under the same legal theory. Therefore, defendants' liability with respect to its employment practices would be subject to resolution in a single adjudication. The only difference among the putative class members is their individual damages. However, this difference is of minimal consequence, given the common questions of law and fact among the proposed class members. The Fourth Circuit has found that the need for "individualized proof of damages will not defeat class certification." Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 429 (4th Cir. 2003) (emphasis in original). Moreover, the damages in this case do not appear to be particularly complex. Plaintiffs have already calculated the estimated damages for a number of proposed class members based on the information contained in their declarations; and defendants do not contend that their practices were individualized rather than across the board. Instead, plaintiffs have shown that defendants engaged in a common practice that affected each putative class member, and that this is the "heart" of the litigation. The court finds nothing in plaintiffs' complaint suggesting that the issue of liability is dependent on something unique to each individual plaintiff. Accordingly, the court finds that plaintiffs have met their burden of showing that the common questions of law and fact in this case predominate over questions affecting individual members.

### b. *Class Action is Superior to Other Methods of Adjudication*

Plaintiffs also must show that a class action is superior to other available methods of adjudication. In answering this inquiry, courts look at: "(1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in the forum; and (4) manageability." Hewlett, 185 F.R.D. at 220-21. Also, "'there is a

13

strong presumption in favor of a finding of superiority' where ... 'the alternative to a class action is likely to be no action at all for the majority of class members.'" Soutter v. Equifax Info. Servs., LLC, 307 F.R.D. 183, 218 (E.D. Va. 2015) (quoting Cavin v. Home Loan Ctr., Inc., 236 F.R.D. 387, 396 (N.D. Ill. 2006)). In this case, plaintiffs have shown that proceeding as a class action is superior to other methods of adjudication.

First, courts must consider "the interest of members of the class in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). Plaintiffs contend that the individual putative class members have little interest, if any, in bringing their own individual actions. As explained above, the proposed class members reside in Guatemala, do not speak English, are indigent, are unfamiliar with U.S. law, and may only be due relatively small sums of money. These factors all show that the individual class members would have little interest in pursuing separate actions. See Amchem Prods., Inc., 521 U.S. at 617 ("The policy at the very core of class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997))); see also Leyva v. Buley, 125 F.R.D. 512, 518 (E.D. Wash. 1989) ("With their lack of English, their presumably limited understanding of the legal system, the fact that few live permanently within the [forum], and their generally indigent status, it is highly unlikely that the individual plaintiffs would pursue this litigation if class certification were not allowed.") Therefore, this factor does not weigh against certification.

Second, the court should consider the "extent and nature of any litigation concerning the controversy already commenced by or against members of the class." Fed. R. Civ. P. 23(b)(3)(B). In this case, no other lawsuits have been filed by members of the proposed class.

14

Therefore, this factor does not weigh against certification.

Under the third factor, the court must evaluate the "desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). In this case, there is a desire to concentrate the litigation in this forum because the defendants conducted significant business in Virginia, and those business activities underlie the claims at issue in this case. In addition, class counsel is located in Charlottesville, Virginia and Washington, D.C., which would make this forum desirable because of its proximity to counsel. Finally, the putative class is located in Guatemala. As such, there is no high concentration of class members in any one forum. Therefore, this factor does not weigh against certification.

Finally, the last factor that courts must consider is the difficulty that may be "encountered in the management of the class action." Fed.R.Civ.P. 23(b)(3)(D). This factor is the "most hotly contested and the most frequent ground for holding that a class action is not superior." Hewlett, 185 F.R.D. at 221 (quoting Buford v. H&R Block, Inc., 168 F.R.D. 340, 363 (S.D. Ga. 1996)). However, "[t]here exists a strong presumption against denying class certification for management reasons." Id. This inquiry involves a consideration of "the potential difficulties in identifying and notifying class members of the suit, calculation of individual damages, and distribution of damages." Id. In this case, the court finds that the class would be manageable.

Although the putative class members live in Guatemala and do not speak English, these difficulties do not amount to a substantial barrier in identifying and notifying class members. See Haywood, 109 F.R.D. at 593 (finding that, with a proposed class of migrant workers, "there are undoubtedly administrative complications in managing a class of this sort, but ... tools exist to make the process work."). Even though plaintiffs contend that defendants do not have any records that would aid in identifying potential class members, every potential class member has

15

an H-2B visa that states both their employer and time period of employment. In fact, at this point, plaintiffs have been able to identify 18 class members and obtain their declarations in support of plaintiffs' arguments. Also, defendants do not contend that prosecuting a class action in this case would be unmanageable. Plaintiffs do acknowledge that there will be some difficulty in notifying class members pursuant to Rule 23(b)(3). However, plaintiffs state that they can provide the court with a notice plan upon an order granting class certification. Accordingly, the fourth factor does not weigh against certification because, as plaintiffs contend, maintaining this case as a class action outweighs any administrative burdens. Should problems arise in the future rendering certification inappropriate, the court can always decertify at that time. Haywood, 109 F.R.D. at 593.

Overall, there is concern that, in the absence of a class action, only a very few H-2B workers will be positioned to litigate their claims. Accordingly, and in conclusion, the court finds that Rule 23(b)(3) class certification is appropriate in this case.

### III. Fair Labor Standards Act

Under the Fair Labor Standards Act, an employee may initiate a class action on behalf of himself and others "similarly situated." 29 U.S.C. § 216(b). Unlike class actions under Rule 23, each individual class member must affirmatively consent in writing to participate in the suit under the FLSA. Id. Therefore, the court must first determine that the plaintiffs are "similarly situated," and then that they "opted-in" by filing consents to join the suit. Houston v. URS Corp., 591 F. Supp. 2d 827, 831 (E.D. Va. 2008). First, "upon a minimal evidentiary showing" that the class is similarly situated, the plaintiff may move forward with a collective action on a "provisional basis." Rawls v. Augustine Home Health Care, Inc., 244 F.R.D. 298, 300 (D. Md. 2007). Then, the court proceeds to the second step following discovery. Id. At this second stage,

16

the court applies a more stringent inquiry to determine whether the plaintiffs are similarly situated. Id.

The first inquiry is whether the plaintiffs are similarly situated. This is a "fairly lenient standard" and requires only "minimal evidence." Enkhbayar Choimbol v. Fairfield Resorts, Inc., 475 F. Supp. 2d 557, 562 (E.D. Va. 2006). The primary focus is whether the potential plaintiffs are "similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined." Id. In this case, the named plaintiffs have made a sufficient showing that they are similarly situated to the proposed class members. Again, plaintiffs seek recovery under the same legal theories based on defendants' alleged violations of employment law pertaining to reimbursements, wages, overtime, and documentation. Plaintiffs bolster their allegations with declarations from several potential class members. In addition, other courts have found that such workers were similarly situated in like circumstances. See De Luna-Guerreo v. N.C. Growers Ass'n, Inc., 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004) (granting request for certification under § 216(b) when all plaintiffs worked for defendant and complained of defendant's reimbursement policy, which allegedly resulted in a minimum wage violation under FLSA); see also Montoya v. S.C.C.P. Painting Contractors, Inc., No. CCB-07-455; 2008 WL 554144, at *2 (D. Md. Feb. 26, 2008) (granting class certification under § 216(b) when plaintiffs showed adequate evidence through sworn declarations of the same FLSA violations, including failure to pay overtime). Accordingly, the court finds that plaintiffs are similarly situated under § 216(b).

Because discovery is complete, it is now appropriate to proceed to the second step of the class certification inquiry. See Essame v. SSC Laurel Operating Co. LCC, 847 F. Supp. 2d 821, 826-27 (D. Md. 2012) (declining to proceed to the next step until discovery has been completed). Defendants are in default and therefore have not argued that decertification is appropriate under

17

the second step of the collective action certification analysis. Id. at 827. As explained above, plaintiffs have made a substantial showing that members of the putative class are similarly situated, and therefore also satisfy this heightened scrutiny.

Plaintiffs have filed consent forms from seventeen members of the potential class after conducting outreach in Guatemala. The court agrees with plaintiffs that a further notice period to allow additional class members to opt-in would be unnecessary. See Bernard v. Household Int'l, Inc., 231 F. Supp. 2d 433, 436 (E.D. Va. 2002) (finding that further notice was unnecessary when plaintiffs already had the names of the individuals within the class, utilized extensive newspaper advertisements, and had ample opportunity to reach these individuals). Therefore, the court grants final certification to plaintiffs' collective action under § 216(b).

## Conclusion

The court finds that this is an appropriate case for certification as a class action. First, plaintiffs meet the requirements of numerosity, commonality, typicality, and adequacy of representation pursuant to Rules 23(a). In addition, the proposed class satisfies the two requirements under Rule 23(b)(3). The proposed class of plaintiffs consists of all individuals admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b), who were employed in the defendants' forestry operations from October 2008 until the filing of the complaint. In addition, plaintiffs met their burden for certifying a collective action under FLSA.

For the foregoing reasons, the court grants plaintiffs' motion to certify class and collective action. The court appoints the named plaintiffs as class representatives and plaintiffs' counsel of record as class counsel. Plaintiffs are directed to file their Rule 23(b)(3) notice plan within thirty (30) days from the date of entry of this memorandum opinion and accompanying order. The court will take plaintiffs' motion for default judgment under advisement until the

18

conclusion of the opt-out period for class members. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 5th day of October, 2015.

*/s/ Glen Conrad*
Chief United States District Judge